```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
IRINA T. WAHEED, pro se,                        :
                                                :
                         Plaintiff,             :    **OPINION & ORDER**
                                                :    04-CV-5630 (DLI)(LB)
         -against-                              :
                                                :
SUNY BROOKLYN EDUCATIONAL                       :
OPPORTUNITY CENTER,                             :
                                                :
                         Defendant.             :
                                                :
----------------------------------------------------------------x
```

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Irina T. Waheed ("Waheed"), *pro se*, brings this action against defendant SUNY Brooklyn Educational Opportunity Center ("BEOC") alleging discrimination stemming from BEOC's failure to promote her, her termination and alleged unequal pay and privileges due to her national origin, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). BEOC now moves for summary judgment pursuant to Fed. R. Civ. P. 56 ©. For the reasons set forth below, BEOC's summary judgment motion is granted.

**Facts**

*Unequal Pay and Privileges Claim*

Waheed is of Russian-Ukranian origin. Rule 56.1 Stat. ¶ 1. Waheed was a student at BEOC and obtained a certificate as a bookkeeper's assistant. She was also employed by BEOC. *Id.* at ¶ 3-4. Waheed's first job at BEOC was as a "lab monitor" in BEOC's career services program where she helped students in their job searches. *Id.* at ¶ 4. Waheed began working as a lab monitor part-time in April 2002 at the hourly wage of $7.50. *Id.*

In August or September 2002, Waheed learned from Dr. James Ogunusi ("Ogunusi"), BEOC's business manager and her direct supervisor, that she was "the lowest paid person in the entire school." *See* Summary of Important Facts, p. 1-2.[1] Waheed also discovered that Earleen Samuels, a non-Russian-Ukranian lab employee with less experience than Waheed, was being paid $10.00 an hour. *Id*; Rule 56.1 Stat. ¶ 6. Waheed complained to Dr. Linda Noble, the head of BEOC's internship program. *Id.* Eventually, Waheed's pay grievance reached Dr. Lois Blades-Rosado ("Dr. Rosado"), the Dean and Executive Director of BEOC, who approved a pay increase to $10.00 per hour. *Id.* at ¶ 7. Waheed concedes that she received the pay increase but asserts that Dr. Rosado was slow in giving her the increase and that she should have been paid more than Samuels, not the same. Opposition to Rosado, p. 1. Waheed's pay increase was effective October 9, 2002. *See* Exhibit 1 to Plaintiff's Affirmation.

---

[1] "Rule 56.1 Stat." referrers to Defendant's Local Rule 56.1 Statement of Material Facts, annexed to Defendant's Motion for Summary Judgment. As noted below, Waheed did not file a counter-statement of material facts but filed documents entitled (1) Plaintiff's Affirmation in Opposition to Memorandum of law in Support of Defendant's Motion for Summary Judgment" (hereafter referred to as "Plaintiff's Affirmation"); (2) Affirmation in Opposition to the Rosado Declaration ("Opposition to Rosado"); and (3) Affirmation in Opposition to the Sommer Declaration ("Opposition to Sommer"). The documents explain Waheed's version of the disputed facts and, for the most part, are based on her personal knowledge. Where Waheed's affdavits in opposition differ from the affidavits submitted by BEOC in support of its motion for summary judgment, the court will make a note with a citation to Waheed's affidavit. In addition, Waheed's complaint contains a Summary of Important Facts ("Summary of Important Facts"). For the purposes of this motion, the court is required to " accept the allegations of the complaint as true and take the record in the light most favorable to . . . the party against whom summary judgment is sought." *Munafo v. Metropolitan Transp. Authority*, 285 F.3d 201, 212 (2d Cir. 2002). Thus, the court takes the allegations made by Waheed in her "Summary of Important Facts" in the light most favorable to Waheed. Moreover, as a *pro se* litigant, Waheed's papers are liberally construed. *See Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996). However, this liberal construction does not "relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003).

In July 2002, several months after being hired as a part-time lab monitor, Waheed began to intern in BEOC's Business Office. Eventually, as further explained below, Waheed was hired as a part-time College Accounting Assistant. Waheed claims that, as a part-time Business Office employee, she was subject to less favorable working conditions than other employees of the Business Office because she was not listed on the phone directory, not provided keys to the office and not listed on internal memoranda. Summary of Important Facts, pp. 4, 7. According to Waheed, she was told that Dr. Rosado did not want her to have keys to the office because she was a "part-timer." *Id.* at p. 4. Waheed also claims that her absence from the phone directory and from internal memoranda was due to the fact that "Dr. Rosado never really recognized me as an employee working in the Business Office [sic]." Opposition to Rosado, p. 3.

*Failure to Promote Claim*

In the Spring of 2003, several employees of BEOC's Business Office retired. Waheed had been working as an intern in the Business Office since July 2002 and, by all accounts, doing a great job. *See* Affidavit of James Ogunusi, Annexed to the Complaint.[2] In preparation for the retirements,

---

[2] Defendant annexed Waheed's complaint, which contains several affdavits originally compiled as evidence in the EEOC hearing. Included in the complaint are several unsworn documents. One unsworn document is entitled "Statements Made by Mr. J. Wright Though Conversations In Person and On The Phone." Another unsworn document is entitled "Statements Made By Clifton Murdock (Teacher- SUNY-BEOC) in Person and By Phone." Because these are unsworn statements, they cannot be used to oppose Defendant's motion. *See* Fed. R. Civ. P. 56 (e). Waheed as also included in her complaint sworn statements from Hazelene Brathwaite, Merly Chisholm and Richard Roazzi. Roazzi is Waheed's fiancé. For the most part, these affdavits corroborate non-material issues, such as the fact that Waheed was doing a good job in the Business Office and the affiant's opinion that Waheed was more qualified to be the College Office Assistant (the full-time position that Waheed coveted) than Julie Tapia, who was given the job. *See*, *e.g.*, Affidavit of Hazelene Brathwait, annexed to the Complaint. The only material statements in the affdavits relate to the alleged discriminatory intent on the part of Hanson, Dr. Kenda and Dr. Rosado. However, these assertions consist of rank hearsay (e.g. "I heard statements made in the school" and "someone from Dr. Rosado's

in April 2003, Ogunusi and Jason Wright, an accountant with the BEOC Business Office, met with Dr. Rosado, Dr. Grazyna B. Kenda ("Kenda"), Associate Director for Academic Affairs, and Jacinth V. Hanson ("Hanson"), Assistant to the Associate Director of Academic Affairs. *Id.* At the meeting, Ogunusi and Wright recommended Waheed be offered a full-time College Accounting Assistant position. *Id.* According to Ogunusi, Hanson objected to Waheed receiving a full-time position because she was concerned about Waheed's "accent, ability to speak the English language." *Id.*

Instead of being hired as a full-time College Accounting Assistant, Waheed was hired as a part-time College Accounting Assistant. Rule 56.1 Stat. ¶ 9. The initial appointment ran from May 22, 2003, through June 30, 2003. *Id.* at ¶ 13. Shortly after receiving the appointment, Waheed met with Dr. Rosado to complain about being given a part-time appointment rather than a full-time appointment. Summary of Important Facts, p. 3; Opposition to Rosado, p. 3. Dr. Rosado responded, "I have nothing against you, have no doubt in your qualifications, and I am not listening to anybody not Dr. Kenda or Ms. Hanson." *Id.* As a result of the meeting, Waheed's salary was increased from $15.00 and hour to $18.00 an hour. Summary of Important Facts, p. 3. Waheed's part-time assignment was extended twice by Dr. Rosado. Rule 56.1 Stat. ¶ 14. After the first extension, Waheed again spoke to Dr. Rosado about receiving a full-time position. Summary of Important Facts, p 4. Rosado advised Waheed to file an application. *Id.* In a subsequent conversation, Dr. Rosado told Waheed that the new manager of the Business Office would decide her application for the full-time position. *Id.* at 5; Opposition to Rosado, p. 3.

---

office . . . mentioned that Dr. Rosado said"). These statements would not be admissible at trial and therefore will not be considered in determining Defendant's motion. *See* Fed. R. Civ. P. 56 (e).

Termination Claim

On August 18, 2003, Ronald Sommer became the Associate Director for Finance and Administration, and, as such, the manager of the Business Office. In this position, Sommer was Waheed's supervisor. Rule 56.1 Stat. ¶ 21. Dr. Rosado instructed Waheed to teach Sommer about the office's accounting techniques. Opposition to Sommer, p. 2; Summary of Important Facts, 5. During that conversation, Dr. Rosado informed Waheed that a new human resources manager would be joining the Business Affairs office, and that the new human resources manager was Puerto Rican and "a very sweet lady." Summary of Important Facts, p. 5.

On August 20, 2003, Waheed formally applied for a full-time College Accounting Assistant position. Rule 56.1 Stat. ¶ 22. Upon receiving the application, Sommer told Waheed that the Business Office was going to be reorganized and that he was unable to consider the application until he knew what positions were available. *Id.* at 23. Waheed surmises that Sommer's appointment was part and parcel of Dr. Rosado's plan to eliminate her (and Wright) from the Business Office. Opposition to Sommer pp. 1, 3; Summary of Important Facts, p. 5-6.

In September 2003, Sommer presented his plan to reorganize the Business Affairs Office. Rule 56.1 Stat. ¶ 24. The plan recommended that Waheed's position as part-time College Accounting Assistant be eliminated in favor of a full-time College Office Assistant. *Id.* at ¶ 28. The College Office Assistant paid less than a full-time College Accounting Assistant and had more clerical duties. *Id.* at 31. Dr. Rosado approved the reorganization plan. *Id.* at 25. Waheed's position was eliminated and she was terminated effective September 19, 2003. *Id.* at 26. Although Waheed submitted her application to be a full time College Accounting Assistant, she never submitted an application to be the College Office Assistant. Thus, Waheed was never considered for, nor hired to be, the new

College Office Assistant. Opposition to Sommer, p. 2. When Waheed was informed of her termination she asked to be sent back to Academic Affairs (presumably as a lab monitor) but Sommer refused her request. *Id.* at pp. 2-3.

The full-time College Office Assistant position was given to Julie Tapia, a person not of Russian-Ukranian national origin. Rule 56.1 Stat. ¶ 32. Waheed alleges that Dr. Rosado and Sommer did not follow the usual protocol when hiring Tapia. Summary of Important Facts, pp. 6-7. Because the usual protocols were not followed, Waheed was unaware that the position of College Office Assistant was available until after Tapia was hired. *Id.* BEOC admits that Waheed was never considered for the College Office Assistant position because she had applied for the College Accounting Position, a higher paying job, and was over qualified for the College Office Assistant position. Rule 56.1 Stat. 33-34.

Waheed timely filed a complaint with the Equal Opportunity Employment Commission ("EEOC") in March 2004, less than 300 days after she was terminated and was allegedly subject to unequal treatment in the BEOC's Business Office, but more than 300 days after the pay disparity was resolved, as explained below. The EEOC did not sustain Waheed's charges and a right to sue letter was issued on September 30, 2004.

## Discussion

*Summary Judgment Standard*

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. The court must view all facts in the light most favorable to the nonmoving


party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. Moreover, even where there appears to be a genuine issue of material fact, the Supreme Court has instructed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007).

The Second Circuit has recognized that courts must be cautious when granting summary judgment in employment discrimination cases because the employer's intent is frequently at issue. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1998); *Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 989, 998 (2d Cir. 1989). However, the Second Circuit has maintained that summary judgment may still be appropriate "even in the fact-intensive context of discrimination cases." *Abdu Brisson v. Delta Airlines Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The function of the court on a motion for summary judgment in an employment discrimination case "is to determine whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.'" *Cronin v. Aetna Life Insurance Co.*, 46 F.3d 196, 204 (2d Cir. 1995) (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)). The inference of a

discriminatory motive must be supported by something more than mere conjecture since "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). When "a party is proceeding *pro se*, a Court must read the pro se litigant's supporting papers liberally and interpret them "'to raise the strongest arguments that they suggest.' " *Graham v. Henderson*, 89 F.3d at 79 (*quoting Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)).

*Waheed's Failure to Provide a Rule 56.1 Counter-Statement of Material Facts*

Waheed, proceeding *pro se,* has failed to provide a Counter-Statement of Material Facts as required by the court's local rules. In lieu of the required counter-statement, Waheed has provided the Plaintiff's Affirmation which relies on two other documents, the Opposition to the Sommer Declaration and the Opposition to the Rosado Declaration, to demonstrate alleged issues of material fact appropriate for a jury. Although Waheed's failure to comply with the local rule is serious, she has raised issues of fact, although not enough to overcome BEOC's motion for summary judgment. Accordingly, it would not be in the interest of justice for the court to overlook her assertions due to a procedural default. *See Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir. 2001) (court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules"); *see also Pender v. N.Y. Office of Mental Retardation & Developmental Disabilities,* 02 CV 2438, 2006 WL 2013863, *1 (E.D.N.Y. July 18, 2006) (overlooking *pro se* plaintiff's failure to comply with Local Rule 56.1 when there is evidence in the record to support plaintiff's position)*; Melendez v. DeVry Corp.*, 03 CV 1029, 2005 WL 3184277, *2 (S.D.N.Y. Nov. 29, 2005) ("examining the entire record before the Court, glean[ing] the material facts therefrom, and decid[ing] the motion based on those facts" despite *pro se* plaintiff's failure to comply with Local Rule 56.1©). Having arrivied on

the courthouse steps, her arms laden with facts, the court will not deny Waheed admission simply because she wore the wrong shoes.

*Unequal Pay and Privileges Claims*

### Pay Disparity

As a prerequisite to filing a civil action in federal court, Title VII requires a plaintiff to file an administrative charge with the EEOC or a local equivalent agency within 300 days after the alleged discriminatory acts. 42 U.S.C. § 2000e-5(e)(1); *Butts v. City of New York Dep't of Hous. & Pres. & Dev.*, 990 F.2d 1397 (2d Cir. 1993) (holding that a district court only has jurisdiction to hear Title VII claims that are included in an EEOC charge); *Crossman v. Crosson*, 905 F. Supp. 90, 92 (E.D.N.Y. 1995). Waheed alleges that she was denied equal pay, and discovered the disparity in August or September 2002. She further alleges that the pay disparity was an "on going, continuous action." Plaintiff's Affirmation, p. 5. It is undisputed, however, that Waheed received a pay increase, ending the disparity, on October 9, 2002. Plaintiff's Affirmation, Exhibit 1.

The Supreme Court has recently held that "[t]he EEOC charging period is triggered when a discrete unlawful practice takes place. A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination." *Ledbetter v. Goodyear Tire & Rubber Co.*, Inc.,127 S.Ct. 2162, 2169 (2007). Thus, when alleging a discriminatory pay disparity, the operative date is not the discovery of the disparity, but when the salary was determined. Accordingly, a plaintiff should file "an EEOC charge within [300] days after each allegedly discriminatory pay decision was made." *Id.* Here, Waheed was hired in April 2002 at the wage of $7.50 per hour. In August or September 2002, she discovered that a non-Russian-Ukranian employee received a higher wage.

Thus, the EEOC complaint needed to be filed within 300 days of April 2002. The EEOC complaint was filed in March 2004 and is thus untimely.

Moreover, the alleged pay disparity between Waheed and the non-Ukranian-Russian individual who was also working as a lab monitor was corrected on October 9, 2002. Thus, after that date, Waheed did not suffer from any allegedly discriminatory action. October 9, 2002, is not within the 300-day charging period, and therefore these claims are time-barred.

Unequal Privileges

Waheed claims that she was discriminated against when she was denied keys to the Business Office, not listed in the phone directory and not listed on internal memorandum. These claims are not time-barred because they are the result of decisions made during Waheed's tenure as a part-time College Accounting Assistant in the Business Office, beginning May 22, 2003.[3] Thus, the EEOC complaint filed in March 2004 was timely with respect to these claims.

Under the burden-shifting rules set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), a plaintiff has the initial burden of making out a prima facia case of discrimination. See id. at 802. A prima facie case may be established by showing (1) membership in a protected class; (2) satisfactory job performance; (3) termination from employment or other adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in [a protected] class. *Farias v. Instructional Systems, Inc.*, 259 F.3d 91, 98 (2d Cir. 2001).

---

[3] Interestingly, the internal memorandum which Waheed alleges she was omitted from was dated May 14, 2003, a week before she began as a part-time College Accounting Assistant. *See* Summary of Important Facts, p. 7.

The Second Circuit has defined an "adverse employment action" to mean a "materially adverse change in working conditions [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted); *see also Pimentel v. City of New York*, 00 CV 326, 2002 WL 977535, at *4 (S.D.N.Y., May 14, 2002)("[d]enial of 'requested transfers [that] did not involve an upgrade in position or increases in wages' is not an adverse employment action") (quoting *Gonzalez v. Federal Express Co.*, 95 CV 3529, 1998 WL 289722, at *4 (S.D.N.Y. June 3, 1998)). For instance, termination of employment, demotion evidenced by a decrease in a wage or salary, material loss of benefits and significantly diminished material responsibilities would constitute materially adverse changes. Id. Applying the *McDonnell Douglas* elements, Waheed's claim must be dismissed because, as a matter of law, a denial of keys to the office, not being listed in a phone directory and being omitted from an internal memorandum are not adverse employment actions.

Specifically, the court finds that not providing Waheed with a key to the office– although certainly an inconvenience– does not rise to the level of an adverse employment action since it had no decernable effect on her ability to work in the Business Office. See *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 352 (S.D.N.Y. 2006) ("[h]owever, as a matter of law, the failure to promptly provide a replacement key did not cause a materially adverse change to Plaintiff's employment, particularly where the absence of a key did not prevent her from working."). The same is true for the failure to include Waheed in the employee directory. See *Nakis v. Potter*, 01 CV 10047, 2004 WL 2903718, *20 (S.D.N.Y. Dec. 15, 2004) (finding that failing to provide keys to an employee bathroom, not listing an employee's name in a telephone directory and not providing an employee with business cards are not adverse employment actions); *Ruggieri v. Harrington*, 146 F. Supp. 2d

202, 217-18 (E.D.N.Y. 2001) (concluding that listing a name wrong in the school directory is not an adverse employment action). Finally, it is unclear to the court how the failure to place Waheed's name on an internal memorandum had any effect on Waheed's work.

*Failure to Promote*

The record indicates that in the Spring of 2003, BEOC's Business Office was severely understaffed. Waheed was a part-time College Accounting Assistant at the time, but wished to be considered for a full-time position. At a meeting in April 2003, Wright and Ogunusi, two employees of the Business Office, suggested to Dr. Rosado, Dr. Kenda and Hanson that Waheed be given a full-time position. According to Ogunusi, Hanson objected to Waheed's appointment because she was concerned about Waheed's accent and ability to speak English. Eventually, Waheed was given a part-time position in the Business Office. Waheed alleges that this episode is evidence of national origin discrimination that violates Title VII. The court disagrees.

As noted above, a plaintiff has the initial burden of making out a prima facie case of discrimination. The fourth and most important prong of the prima facie case requires the plaintiff to demonstrate that "the discharge or adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in [a protected] class." *Farias*, 259 F.3d at 98.

The court believes that Waheed satisfies the first three prongs of the prima facie case, but she cannot satisfy the fourth.[4] Simply put, there is no evidence that Dr. Rosado, as the decision maker,

---

[4] Waheed is in a protected class because she is claiming discrimination based on her nation of origin, the Ukraine. Under the Code of Federal Regulations, national origin discrimination is defined as "the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1.

was influenced by Hanson's alleged belief that Waheed was not qualified for the job because of her accent and, by extension (taking all the evidence in the light most favorable to the nonmoving party), her national origin. The court finds that, based on Ogunusi's affidavit and anticipated testimony, a jury could reasonably conclude that Hanson harbored discriminatory animus toward Waheed. Thus, Waheed could make out a prima facie case of discrimination if, and only if, Hanson played a role in the decision not to promote her. *Dawson v. Bumble & Bumble*, 398 F.3d 211, 224-25 (2d Cir. 2005) (holding that plaintiff could not "base a claim of sexual orientation discrimination on [coworkers'] alleged comments" without evidence that supervisor consulted coworkers regarding termination decision); *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 125-26 (2d Cir. 2004)("it is clear that 'impermissible bias of a single individual at any stage of the . . . process may taint the ultimate employment decision . . . even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the process.'") (*quoting Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir.1999)); *Douglas v. M. Swift & Sons, Inc.*, 371 F. Supp. 2d 137, 145 (D. Conn. 2005) ("[a]n employer may be held liable under Title VII if the decision maker did not harbor discriminatory animus but acted on biased information provided by lower-level supervisors who harbored such animus.")

Waheed's claim fails because it is undisputed that Dr. Rosado, the ultimate decision maker, did not rely on Hanson's opinion in deciding not to promote Waheed. *See Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) ("remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark."). In fact,

Waheed alleges that when she approached Dr. Rosado about the full-time College Accounting position, Dr. Rosado responded "I have nothing against you, have no doubt in your qualifications and I am not listening to anybody, not Dr. Kenda or Ms. Hanson." Summary of Important Facts, p. 3. There is no genuine issue of material fact regarding who made the decision not to hire Waheed; the decision was Dr. Rosado's alone.

Waheed claims that Dr. Rosado harbored discriminatory animus against her, which motivated Dr. Rosado's decision not to promote her to a full-time position. Waheed's evidence is three-fold. First, she alleges that Dr. Rosado was rumored to favor Hispanics. Second, Dr. Rosado failed to chastise Hanson for her allegedly discriminatory remarks. Third, Rosado commented that a new employee was Puerto Rican and "very sweet." None of these satisfy Waheed's burden of demonstrating an inference of discrimination in Dr. Rosado's decision not to promote her.

First, Waheed's subjective belief that Dr. Rosado favored Hispanics, without more, does not satisfy Waheed's burden of showing that BEOC's decision not to promote her occurred under circumstances giving rise to an inference of discrimination. *Bickerstaff v. Vassar Coll.*, 196 F.3d at 456 (2d Cir. 1999); *Love v. City of New York Dept. of Consumer Affairs*, 390 F. Supp. 2d 362, 370 (S.D.N.Y. 2005). Second, Dr. Rosado's stray remark that a new employee is Puerto Rican is insufficient to demonstrate that Dr. Rosado harbored a discriminatory animus toward Waheed. *See, e.g., Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) ("[s]tray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination."). Moreover, there is only the thinnest evidence that Dr. Rosado's comment was in any way related to her decision not to promote Waheed. *See Tomassi*, 478 F.3d at 115; *Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, 356 F. Supp. 2d 288, 295 (S.D.N.Y. 2005). Finally, the fact

that Dr. Rosado did not condemn Hanson's remark does not show that Dr. Rosado agreed with Hanson, nor that her decision not to promote Waheed was discriminatory. As noted above, it is undisputed that Dr. Rosado did not rely on Hanson in making her decision not to promote Waheed. It stretches credulity to believe that Hanson's single comment created a pervasive environment of discrimination that Dr. Rosado had a duty to combat. *See Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000)(holding that isolated incidents of offensive conduct are generally inadequate to establish a discrimination claim, and plaintiff must show either a single incident was extraordinarily severe, or that a series of incidents was sufficiently continuous and concerted to cause a change in the work environment."). No reasonable jury could conclude that Waheed was denied a promotion due to national origin discrimination, and therefore summary judgment is appropriate as to this claim.

Termination

Waheed has an ostensibly viable termination claim because she was replaced by someone outside the protected class. *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) ("the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis."); *see also James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000) (holding that discrimination can be inferred from evidence that the decision-maker showed a "preference for a person not of the protected class."). It is undisputed that Julie Tapia, the individual who was made College Office Assistant after Waheed was terminated, is not of Ukranian-Russian national origin. Thus, Waheed is able to make out every element of the prima facie case: she is in a protected class, was qualified for the job, suffered an adverse employment action (termination) and the termination occurred under circumstances giving rise to an inference of discrimination. *See De la Cruz v. New York City Human*

*Resources Admin. Dept. of Social Services,* 82 F.3d 16, 20 (2d Cir. 1996) (Puerto Rican man replaced by African-American man makes out fourth prong of the prima facie case because he was replaced by someone outside his protected class).

Because Waheed has made out a prima facie case of national origin discrimination, the burden shifts to BEOC to articulate a legitimate, nondiscriminatory reason why Waheed was terminated and Tapia was hired. See *McDonnell Douglas v. Green*, 411 U.S. at 802. BEOC's burden at this stage is merely one of production, not persuasion. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) ("[t]he employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior."). BEOC contends that it eliminated Waheed's position (part-time College Accounting Assistant) in an effort to save money and promote efficiency. The position of College Accounting Assistant was replaced by a lower paying position of College Office Assistant, and that job was given to Tapia, not Waheed. The court accepts this as a legitimate reason for Waheed's termination.

Recognizing that employers will often disguise discriminatory intent with a pretextual, nondiscriminatory explanation for an adverse employment action, the McDonnell Douglas burden shifting analysis next allows the plaintiff to present sufficient evidence to permit a rational finder of fact to infer that the defendant's proffered nondiscriminatory reason is a pretext for unlawful discrimination. See *Stern v. Trustees of Columbia Univ. in the City of New York*, 131 F.3d 305, 312 (2d Cir. 1997). At this final stage, the plaintiff is entitled to rely on the same evidence upon which it established its prima facie case. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149 (2000). However, the plaintiff has the added burden of convincing the court that defendant's

legitimate, nondiscriminatory reason is actually a pretext for discrimination. See Id. ("[t]hus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); *McCarthy v. New York City Technical College of City University of New York*, 202 F.3d 161, 166 (2nd Cir. 2000).

Waheed has failed to meet her burden of demonstrating that the reorganization of the Business Office was a pretext to terminate her due to her Ukranian-Russian national origin. The record indicates that the position that Waheed occupied, College Accounting Assistant, was eliminated in favor of a lower paying, merely clerical position, that of College Office Assistant. Waheed was not selected for this position. Rather, Tapia, an individual not of Ukranian-Russian national origin, was selected. BEOC credibly explains that Waheed was not selected for the position because she was seeking a higher paid position consummate with her skill level and that she applied to be a full-time College Accounting Assistant, not College Office Assistant. Aside from the fact that Tapia was of a different national origin than Waheed, there is simply no evidence in the record from which a reasonable jury could conclude that BEOC's reorganization was a pretext for discrimination.

Waheed asserts, without any evidence, that the reorganization plan did not actually save BEOC any money since the lower paying College Office Assistant position had benefits, while the higher paying part-time College Accounting Assistant position did not. There is no evidence in the record of BEOC's actual cost savings. However, Waheed has not presented any evidence that the reorganization was pretextual other than her own conjecture about what BEOC may or may not have saved. *C.f. Stratton v. Department for the Aging for City of New York*, 132 F.3d 869 (2d Cir. 1997) (plaintiff could show that cost cutting reason was pretextual where she was able to demonstrate that

the money was available from other sources). BEOC, on the other had, has demonstrated that Tapia made $12.00 an hour, $6.00 less than Waheed was being paid, indicating a cost savings. The law does not require BEOC to prove the veracity of their legitimate reason, but simply to articulate one.

Finally, since there is no allegation that it was BEOC's policy to transfer employees rather than lay off employees, Waheed's claim that BEOC's denial of her transfer request after she was terminated from the Business Office does not demonstrate pretext. *C.f. Gallo v. Prudential Residential Servs.*, L.P., 22 F.3d 1219 (2d Cir. 1994) (question of fact existed precluding summary judgment in reduction-in-force case where plaintiff was laid-off, employer failed to interview her for new position for which she was qualified, and stated policy of employer was to find new positions for laid-off employees). Thus, there is no genuine issue of material fact with respect to whether BEOC's reorganization was a pretext for national origin discrimination: It was not. Waheed was terminated for reasons unrelated to her national origin.

**Conclusion**

For the reasons set forth above, defendant's motion for summary judgment is granted. The complaint is dismissed without costs to either party.

SO ORDERED.

DATED:   Brooklyn, New York
         July 24, 2007

_____/s/_____
DORA L. IRIZARRY
United States District Judge